# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDA D. EPPS, <br> Plaintiff <br> v. <br> POTOMAC ELECTRIC POWER COMPANY, *et al.*, <br> Defendants | Civil Action No. 18-1423 (CKK) |

## MEMORANDUM OPINION
(June 10, 2019)

Plaintiff was employed by the Potomac Electric Power Company ("Pepco"), a public utility company owned by Exelon Corporation, from February 22, 1994 until her termination on June 21, 2018. Beginning in March 2006, Plaintiff alleges that she became disabled from work due to a depressive illness and was placed on long term disability leave. In June 2016, Defendants informed Plaintiff that she would be terminated unless she returned to work. Plaintiff contends that she attempted to return to work. However, Plaintiff alleges that Defendants discriminated against her by failing to reinstate her and by ultimately terminating her on June 21, 2018. Plaintiff brings claims for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11. Defendants have filed a Motion to Dismiss, arguing that Plaintiff's claims are untimely and that Plaintiff has failed to state a claim for which relief may be granted.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will GRANT IN PART and DENY WITHOUT PREJUDICE IN PART

---

[1] The Court's consideration has focused on the following documents:

Defendants' Motion to Dismiss. Defendants' Motion is DENIED WITHOUT PREJUDICE IN PART as at least some of Plaintiff's claims are timely. Specifically, the Court concludes that Plaintiff's ADA claim is timely with respect to acts occurring on or after September 19, 2017, and her DCHRA claim is timely with respect to acts occurring on or after June 14, 2017. As such, Plaintiff's claims concerning Defendants' alleged January 2018 decision to terminate her in 90 days if she could not identify a new position and her June 21, 2018 termination are timely. The Court further concludes that Plaintiff has alleged facts sufficient to state a claim for disability discrimination under the ADA and the DCHRA for these events. Additional factual development is required before the Court can more fully assess Plaintiff's claims.

However, Defendants' Motion is also GRANTED IN PART. Plaintiff's claims related to Defendants' June 23, 2016 letter informing her that she needed to return to work and Defendants' alleged August 2016 to May 2017 comments that she would be returned to work shortly are DISMISSED as untimely.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pled allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014).

---

- Defs.' Mem. of Law in Support of Renewed Mot. to Dismiss ("Defs.' Mot."), ECF No. 10;
- Pl.'s Opp'n to Defs.' Renewed Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 11;
- Pl.'s Notice of Filing ("Pl.'s Notice"), ECF No. 12; and
- Defs.' Reply in Support of Mot. to Dismiss ("Defs.' Reply"), ECF No. 13.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Plaintiff alleges that she was hired by Pepco, a public utility company owned by Exelon Corporation, on February 22, 1994 as a Senior Administrative Assistant. Am. Compl., ECF No. 9, ¶ 8. Sometime before March 2006, Plaintiff contends that she was assigned to work as a Service Associate. *Id.*

In March 2006, Plaintiff alleges that she became disabled from work due to a depressive illness. *Id.* at ¶ 9. Due to her depressive illness, Plaintiff claims that Pepco placed her on long term disability leave. *Id.* For the next ten years and three months, Plaintiff claims that she struggled with her mental illness. *Id.* at ¶ 10. But, by 2016, Plaintiff alleges that she was recovered to the extent that she could return to work. *Id.*

On June 23, 2016, Plaintiff claims that Pepco sent her a letter informing her that it had concluded that she was "unable to return to work [her] assigned position, Senior Admin Asst., due to [her] medical condition." *Id.* at ¶ 12. According to Plaintiff, the letter further explained that if Plaintiff's healthcare provider certified that she was allowed to work, Pepco would help Plaintiff and her provider determine whether a reasonable accommodation could be made to allow her to perform the essential functions of her job. *Id.* The letter stated that if Plaintiff did not respond by August 23, 2016, Pepco would terminate Plaintiff's employment. *Id.* Plaintiff claims that, prior to this letter, Pepco had not informed her that there was a time limit for her leave, that her job would not be held, or that she would be terminated if she did not return to work. *Id.* at ¶ 11.

Plaintiff alleges that she responded to Pepco's letter prior to August 23, 2016, informing Pepco that she was ready to return to work. *Id.* at ¶ 13. Plaintiff further alleges that, on multiple occasions, she provided Pepco with medical documentation confirming that she could return to work without limitations. *Id.* at ¶ 14. Following Plaintiff's reply to Pepco's letter, Plaintiff

contends that Pepco human resources managers repeatedly told Plaintiff that a position had been identified and that she would soon be returned to work. *Id.* at ¶ 15. Specifically, in May 2017, Plaintiff alleges that she was told by Pepco that she would be returned to work by the end of the month. *Id.* at ¶ 16. However, Plaintiff was not reinstated.

In January 2018, Plaintiff alleges that Pepco informed her that, in order to be reinstated, she would "have to monitor Pepco's vacancy announcements to identify a suitable position, reapply for employment with Pepco, and be found qualified for an open position." *Id.* Plaintiff was given until April 20, 2018 to be selected for another position or face termination. Plaintiff claims that by placing the burden on her to identify a position, apply, and be selected, Pepco discriminated against her based on her disability because other employees were routinely assigned and reassigned when vacant positions became available. *Id.* at ¶ 17.

On March 19, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants had discriminated against Plaintiff on the basis of her disability by threatening her with termination and by failing to reinstate her. *Id.* at ¶ 3. And, the following day, on March 20, 2019, Plaintiff received a dismissal of her claim by the EEOC and a notice of her rights to sue. *Id.* On June 15, 2018, Plaintiff brought this lawsuit alleging disability discrimination based on Defendants' threats of termination and on Defendants' failure to reinstate Plaintiff.

On June 21, 2018, Pepco terminated Plaintiff's employment. *Id.* at ¶ 20a. Plaintiff alleges that her termination resulted in the loss of wages that she would have earned if reinstated as well as the loss of healthcare coverage that she had maintained as an employee of Pepco. *Id.* Plaintiff filed a new Charge of Discrimination with the EEOC based on her termination and received a dismissal and a notice of her rights to sue on September 18, 2018. *Id.* at ¶ 3. On September 26,

2018, Plaintiff filed an Amended Complaint including allegations related to her termination. *See*

Am. Compl., ECF No. 9.

Defendants have filed a Motion to Dismiss Plaintiff's claims, arguing that her claims are

untimely and that Plaintiff has failed to state a claim for which relief may be granted. *See* Defs.'

Mot., ECF No. 10. That Motion is currently before the Court.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil

Procedure 12(b)(6). According to Rule 12(b)(6), a party may move to dismiss a complaint on the

grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual

allegations that, if accepted as true, "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Defendants move to dismiss Plaintiff's claims for disability discrimination under the

ADA and the DCHRA. Defendants have two arguments for dismissal. First, Defendants contend

that Plaintiff's claims are untimely. Second, Defendants argue that Plaintiff has failed to state a

claim for which relief may be granted. The Court will address each argument in turn.

**A. Timeliness of Plaintiff's Claims**

As an initial matter, Defendants argue that Plaintiff's claims for disability discrimination under the ADA and the DCHRA should be dismissed as untimely. Defendants contend that Plaintiff's ADA claims are subject to a 180-day limitations period starting from the filing of her Charge of Discrimination with the EEOC on March 19, 2018. Defendants further argue that Plaintiff's DCRA claims are subject to a one-year limitations period that was temporarily tolled for the single day that Plaintiff's claims were being considered by the EEOC. Based on these limitations periods, Defendants contend that Plaintiff's ADA claims encompass only those acts occurring on or after September 19, 2017 and that her DCHRA claims encompass only those acts occurring on or after June 14, 2017. Defendants go on to explain that, because Plaintiff's allegations of discrimination all stem from a June 23, 2016 decision to begin termination proceedings if Plaintiff did not return to work, all of her claims are untimely and should be dismissed. For the reasons explained below, the Court agrees in part and disagrees in part.

It is undisputed that Plaintiff filed her initial Charge of Discrimination with the EEOC on March 19, 2018. *See* Ex. C, ECF No. 10-5.[2] Under the ADA, discrimination claims are generally subject to a 180-day limitations period from the filing of the EEOC charge. 42 U.S.C. § 2000e-5(e)(1). As such, Plaintiff's discrimination claim would be timely only with respect to acts occurring on or after September 19, 2017.

---

[2] On a motion to dismiss, the Court can consider Plaintiff's EEOC charge because it is expressly referred to in her Amended Complaint. Am. Compl., ECF No. 9, ¶ 3; *see EEOC v. Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (explaining that on a motion to dismiss, the court can consider documents incorporated in the complaint). Additionally, the Court can take judicial notice of Plaintiff's EEOC charge as it is a public document. *See Austin v. Am. Inst. for Research*, 75 F. Supp. 3d 247, 252 n.3 (D.D.C. 2014) (taking judicial notice of an EEOC charge as it is a public document).

But, Plaintiff contends that the limitations period for her discrimination claim is actually 300 days—not 180 days. In making her argument in support of a 300-day limitations period, Plaintiff relies on 42 U.S.C. § 2000e-5(e)(1). Under this provision, a Charge of Discrimination "shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred … except that in a case of an unlawful employment practice with respect to which the person aggrieved has *initially instituted proceedings with a State or local agency* … such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1) (emphasis added). When a charging party files a Charge of Discrimination with the EEOC in the District of Columbia, that claim is automatically cross-filed with the D.C. Office of Human Rights pursuant to a work-sharing agreement. *See Schuler v. PricewaterhouseCoopers LLP*, 514 F.3d 1365, 1372 (D.C. Cir. 2008) (explaining the work-sharing agreement). Pursuant to this work-sharing agreement, and because her EEOC claim was automatically cross-filed with the D.C. Office of Human Rights, Plaintiff contends that the limitations period for her ADA claim is extended to 300 days.

However, the Court finds that Plaintiff glosses over crucial language in 42 U.S.C. § 2000e-5(e)(1). According to the language of the statute, the limitations period is extended to 300 days only if "the person aggrieved has *initially instituted proceedings with a State or local agency*." 42 U.S.C. § 2000e-5(e)(1) (emphasis added). Here, Plaintiff filed a Charge of Discrimination with the EEOC which, due to a work-sharing agreement, was automatically cross-filed with the D.C. Office of Human Rights. But, Plaintiff's charge was initially filed with the EEOC, not with the D.C. Office of Human Rights, and Plaintiff did not institute or pursue relief through the D.C. Office of Human Rights.

In *Ashraf-Hassan v. Embassy of France*, 878 F. Supp. 2d 164 (D.D.C. 2012), Judge James E. Boasberg dealt with the limitations period under 42 U.S.C. § 2000e-5(e)(1), and the Court is persuaded by Judge Boasberg's excellent reasoning. In *Ashraf-Hassan*, the plaintiff filed a Charge of Discrimination with the EEOC and argued that because her charge was cross-filed with the D.C. Office of Human Rights, she should be able to take advantage of the 300-day limitations period. 878 F. Supp. 2d at 170. The court disagreed with plaintiff, relying on an admittedly unpublished opinion without precedential value from the United States Circuit Court for the District of Columbia Circuit ("D.C. Circuit"), *Simpkins v. Washington Metropolitan Area Transit Authority*, No. 96-7188, 1997 WL 702349 (D.C. Cir. Oct. 10, 1997).

In *Simpkins*, the D.C. Circuit explained that the 300-day limitations period applies only if the plaintiff had initiated proceedings with a state or local agency before filing an EEOC claim: "The Supreme Court has explained that the purpose of the longer filing period in 'deferral states' (i.e., those with a local agency empowered to address discrimination) is 'to prevent forfeiture of a complainant's federal rights while participating in state proceedings.' *Mohasco Corp. v. Silver*, 447 U.S. 807, 821, 100 S.Ct. 2486, 65 L.Ed.2d 532] (1980). If the complainant is not participating in a state proceeding, then there is no reason to extend the 180–day filing period. 'To allow a Title VII litigant the benefit of the extended limitations period merely because she fortuitously works in a deferral state would ignore the plain language of the statute and its legislative purpose.' *Kocian v. Getty Refining & Mktg. Co.*, 707 F.2d 748, 751 (3d Cir.1983)." *Ashraf-Hassan*, 878 F. Supp. 2d at 171 (quoting *Simpkins*, 1997 WL 702349, at *3).

The Court agrees with *Ashraf-Hassan* in finding that the 300-day limitations period does not apply in cases like this, where Plaintiff initiated proceedings with the EEOC, rather than with a local or state agency. *See Berger v. Medina Cty. Ohio Bd. of Cty. Comm'rs*, 295 Fed. Appx. 42,

46 (6th Cir. 2008) (300-day limitations period did not apply where aggrieved party did not first file with appropriate Tennessee agency); *Major v. Plumbers Local Union No. 5 of the United Assoc. of Jouneymen and Apprentices of the Plumbing and Pipe-Fitting Indus. of the U.S. and Can., AFL-COI*, 370 F. Supp. 2d 118, 126 (D.D.C. 2005) (explaining that "for the 300-day limit to apply, a plaintiff in a deferral state must first initiate a proceeding with the State or local agency having authority to grant the desired relief"); *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202-03 (D.D.C. 2016) (dismissing the plaintiff's ADA, Title VII, and ADEA claims because the plaintiff "does not allege that she first filed a charge with the D.C. Office of Human Rights, hence the 180-day deadline, rather than the 300-day extended deadline, applies"). Plaintiff fails to cite any case in which a court has held that a plaintiff may take advantage of the 300-day limitations period simply by having a claim automatically cross-filed with a state or local agency. *See Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004) (not directly addressing the issue of whether or not the 300-day limitations period applies when the charge is initially filed with the EEOC rather than a state or local agency); *Simms v. Ctr. For Corr. Health & Policy Studies*, 794 F. Supp. 2d 173, 188 (D.D.C. 2011) (same); *Miller v. Gray*, 52 F. Supp. 3d 62, 68 (D.D.C. 2014) (same). In fact, the case on which Plaintiff primarily relies for support, *Slate v. Public Defenders Service for the District of Columbia*, 31 F. Supp. 3d 277 (D.D.C. 2014), explicitly states that the limitations period "is extended to 300 days when the person has *initially instituted a procedure with a state or local agency*." 31 F. Supp. 3d at 294-95 (emphasis added). And, nowhere does Plaintiff allege that she initially instituted a procedure with the D.C. Office of Human Rights or other state or local agency.

Accordingly, the Court concludes that the 180-day limitations period applies to Plaintiff's ADA claim. As such, her ADA claim is timely only with respect to acts occurring on or after

September 19, 2017. The Court further notes that the parties do not appear to dispute that Plaintiff's DCHRA claim encompasses only those acts occurring on or after June 14, 2017. The Court's next step is to determine which of Plaintiff's allegations are timely based on these limitations periods for the ADA and the DCHRA.

Defendants contend that all of Plaintiff's claims are untimely as they all stem from a decision to terminate Plaintiff unless she was reinstated at Pepco, which was initially communicated to Plaintiff by letter on June 23, 2016. The Court disagrees. In the letter, Defendants informed Plaintiff that if she did not soon return to work, she would be terminated. *See* Am. Compl., ECF No. 9, ¶¶ 11-12. But, the June 23, 2016 letter also stated "that if [Plaintiff's] health care provider certified that [Plaintiff's] condition allowed her to work with medical restrictions, Pepco would work with her and her provider to determine whether a reasonable accommodation could be made for her to perform the essential function of her job." *Id.* at ¶ 12; *see also* Ex. A, ECF No. 10-3. [3] Based on the language in the letter, the Court concludes that Plaintiff did not have reason to believe that she would imminently not be reinstated and terminated. As such, the limitations period did not begin to run as Plaintiff had not "develop[ed] a reasonable suspicion of the alleged harm." *Johnson v. Holder*, 598 F. Supp. 2d 50, 55 (D.D.C. 2009).

Accordingly, the Court concludes that all of Plaintiff's claims are not made untimely because the June 23, 2016 letter was sent to Plaintiff outside the limitations period for ADA and

---

[3] The June 23, 2016 letter was expressly referred to in Plaintiff's Amended Complaint and can be considered on Defendants' Motion to Dismiss. Am. Compl., ECF No. 9, ¶ 12; *Xavier Parochial Sch.*, 117 F.3d at 624.

DCHRA claims. While Plaintiff cannot base her discrimination claims on this letter, as claims relating to the letter are untimely, Plaintiff can proceed with any timely allegations.[4]

In addition to the June 23, 2016 letter, in her Amended Complaint, Plaintiff alleges that "[d]uring the months following August 2016, Pepco human resources managers repeatedly told [Plaintiff] that a position had been identified for her and that she would soon be returned to work. However, Pepco did not return [Plaintiff] to work. Instead, [Plaintiff] was told that the position was not available." Am. Compl., ECF No. 9, ¶ 15. These encounters seem to have culminated in May 2017 when "[Plaintiff] was again told by Pepco that she would be returned to work before the end of the month. However, Pepco did not return [Plaintiff] to work." *Id.* at ¶ 16. Like the June 23, 2016 letter, these encounters also occurred outside of the limitations period for the ADA, which encompasses allegations on or after September 19, 2017, and for the DCHRA, which encompasses allegations on or after June 14, 2017. Accordingly, Plaintiff cannot bring a discrimination claim based on these allegations.

However, not all of Plaintiff's allegations are untimely. Plaintiff further claims that in January 2018, "Pepco informed [Plaintiff] that it was not required to hold her position for her and that in order for her to return to work, she would have to monitor Pepco's vacancy announcements to identify a suitable position, reapply for employment with Pepco, and be found qualified for an open position. She was told that unless she was selected for a new position by April 20, 2018, she would be terminated." *Id.* It is undisputed that this event occurred within the

---

[4] The Court notes that even if the 300-day limitations period applied to Plaintiff's ADA claim, allegations relating to the June 2016 letter would still be untimely. Under the 300-day limitations period, Plaintiff's ADA claim would be timely with respect to actions taken only on or after May 24, 2017. And, Plaintiff alleges that she received this letter on June 23, 2016, prior to May 24, 2017.

limitations periods for the ADA and the DCHRA, accordingly the Court concludes that it is timely.

Finally, Plaintiff alleges that she was terminated on June 21, 2018. Because her termination occurred after Plaintiff had filed her first EEOC charge on March 19, 2018, Plaintiff filed a second EEOC charge alleging her termination, and received a right to sue letter on September 18, 2018. *Id.* at ¶ 3. Defendants do not dispute the timeliness of Plaintiff's termination claim.

However, the Court notes that there appears to have been an issue regarding Plaintiff's second EEOC charge for her termination. On October 25, 2018, Plaintiff's counsel filed a Notice, informing the Court that, in her second Charge of Discrimination, Plaintiff limited the basis of her complaint to retaliation. *See* Notice of Filing, ECF No. 12. Plaintiff's counsel states that he subsequently wrote to "the [EEOC] and requested that it reopen the investigation to address her complaint of disability based discrimination." *Id.* Defendants provide no argument as to whether or not Plaintiff's failure to allege initially disability discrimination in her second EEOC Charge would render unexhausted claims related to her termination. And, neither party appears to have attached Plaintiff's second EEOC Charge to any of the filings in this case. As such, the Court is unable to fully address this issue at this time.

For the forgoing reasons, the Court concludes that Plaintiff has alleged two timely actions on the part of Defendants—the decision communicated to Plaintiff in January 2018 allowing her 90 days to find a vacant position for which she was qualified and Plaintiff's June 21, 2018 termination. All other allegations are untimely.

**B. The Elements of a Disability Discrimination Claim**

The Court next considers Defendants' second ground for dismissal—Plaintiff's failure to state a claim for which relief may be granted. Defendants contend that Plaintiff failed to establish that she is entitled to the protections of the ADA and the DCHRA and that she has failed to allege any facts suggesting unlawful discrimination. The Court disagrees.

To make a disability discrimination claim under the ADA or the DCHRA, Plaintiff must establish that (1) she has a disability within the meaning of the statute, (2) she was qualified for a position with or without reasonable accommodations, and (3) she suffered an adverse personnel action because of her disability. *See Badwal v. Bd. Of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015) (stating the standard for disparate impact disability discrimination claims). Defendants contend that Plaintiff has failed to allege facts establishing each of the three elements necessary to state a disability discrimination claim under the ADA or the DCHRA. The Court will address each element in turn.

First, in order to state a disability discrimination claim, Plaintiff must allege that she is disabled within the meaning of the ADA. *Badwal*, 139 F. Supp. 3d at 308. A person is disabled within the meaning of the ADA if the person: (1) "has a physical or mental impairment that substantially limits one or more major life activities," (2) has "a record of such an impairment," or (3) "is regarded as having such an impairment." *Nurriddin v. Bolden*, 818 F.3d 751, 756-57 (D.C. Cir. 2016). Plaintiff proceeds primarily under the third ground for proving disability—that Defendants perceived Plaintiff to be disabled. In order to proceed under a "perceived disability" theory, Plaintiff must show that she was subjected to an action prohibited under the ADA

"because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).[5]

As evidence that she was perceived to have a disability by Defendants, Plaintiff alleges that, in 2006, she had become "disabled from work by a depressive illness" and that "Pepco placed her on long term disability leave." Am. Compl., ECF No. 9, ¶ 9. Plaintiff contends that by placing her on long term disability leave due to her depressive illness, Defendants acknowledged Plaintiff's disability and perceived her as being too disabled to work. Plaintiff further alleges that Pepco perceived Plaintiff as disabled based on a June 23, 2016 letter from Pepco to Plaintiff concluding that Plaintiff was "unable to return to work [her] assigned position, Senior Admin Asst., due to [her] medical condition." *Id.* at ¶ 12; *see also* Ex. A, ECF No. 10-3.

Defendants contend that Plaintiff has not alleged any facts establishing that Pepco actually "perceived" Plaintiff as disabled. Instead, Defendants contend that Plaintiff has alleged only "facts [that] are run-of-the-mill actions of an employer communicating with an absent employee about her return-to-work intentions." Defs.' Reply, ECF No. 13, 3. The Court notes that the "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). However, here, the Court finds that Plaintiff has pled more than mere awareness of an

---

[5] In her Opposition, Plaintiff states that to proceed under a perceived disability theory, she must plead that "'(1) she was perceived to have a physical impairment and (2) the impairment was perceived to substantially limit one or more of [her] major life activities.'" Pl.'s Opp'n, ECF No. 11, 9 (quoting *Lytes v. D.C. Water & Sewer Auth.*, 527 F. Supp. 2d 52, 61-62 (D.D.C. 2007)). But, contrary to Plaintiff's framing, the perceived disability need not limit or be perceived to limit a major life activity. Following the ADA Amendments Act of 2008, to proceed under a perceived disability theory no longer requires a showing of limitation on a major life activity. *See Douglas v. D.C. Housing Auth.*, 981 F. Supp. 2d 78, 87 n.4 (D.D.C. 2013).

impairment. Plaintiff has alleged that Defendants took actions in acknowledgment of and in response to her mental disability. Defendants granted Plaintiff long term disability leave and sent her a June 2016 letter explaining that Pepco had concluded that Plaintiff was unable to return to her previous job on account of her disability. Under these circumstances, the Court concludes that Plaintiff has alleged facts tending to show that Defendants perceived her as disabled.

Plaintiff also appears to allege that she is disabled because she has a record of a mental impairment that substantially limits one or more of her major life activities. Pl.'s Opp'n, ECF No. 11, 15. In order to establish that she is a member of a protected class based on a record of disability, Plaintiff must allege that she suffered a disability "'that substantially limited a major life activity, recovered from that impairment, but nonetheless faced employment discrimination because of it.'" *Ellis v. Georgetown Univ. Hosp.*, 723 F. Supp. 2d 42, 50 n.7 (D.D.C. 2010) (quoting *Adams v. Rice*, 531 F.3d 936, 946 (D.C. Cir. 2008)). Again, to establish a record of such an impairment, Plaintiff alleges that her depressive illness prevented her from working, that Defendants placed Plaintiff on long-term disability leave in recognition of her disability, and that, in a June 2016 letter, Pepco informed Plaintiff that it had concluded that she was unable to return to her previous job due to her medical condition. Am. Compl., ECF No. 9, ¶¶ 9-12.

Defendants contend that these allegations are insufficient to establish a record of disability because Plaintiff has failed to allege that she "*ever* suffered from an impairment that substantially limited her in any major life activity, she also has not alleged facts sufficient to assert that she has any 'record of' any ADA- or DCHRA-covered disability, as opposed to a condition sufficient to qualify for benefits under a long-term disability policy." Defs.' Reply, ECF No. 13, 2. It appears to the Court that the major life activity which Plaintiff alleges was impaired by her mental illness is her ability to work. The D.C. Circuit has assumed, but never

decided, that work is a major life activity under the law. S*ee Duncan v. Wash. Metro. Transit Auth.*, 240 F.3d 1110, 1114-15 (D.C. Cir. 2001) (assuming that work is a major life activity); *Adams*, 531 F.3d at 945 (same). While the D.C. Circuit has never actually decided that work is a major life activity, the court has provided guidance on the issue, explaining that "to establish substantial limitation of working activity under the ADA, a plaintiff must allege and prove that in [her] particular circumstances, taking into account the appropriate factors, [her] impairment prevents [her] from performing a 'substantial class' or 'broad range' of jobs otherwise available to [her]." *Duncan*, 240 F.3d at 1115. Here, Plaintiff has broadly alleged that, in 2006, "she had become disabled from work by a depressive illness." Am. Compl., ECF No. 9, ¶ 9. Plaintiff's broad claim, alleging that she was disabled from work generally, is sufficient to establish a substantial limitation of working activity at this stage in the litigation. As such, the Court finds that Plaintiff has alleged that she is disabled due to her record of disability.

In summary, the Court concludes that Plaintiff has sufficiently pled the first element of an ADA and a DCHRA disability discrimination claim—that she falls within a protected class. Plaintiff has alleged both that Defendants perceived her as disabled and that she has a record of disability. Accordingly, the Court will not dismiss Plaintiff's claims on this ground at this time.

Second, in order to state a disability discrimination claim under the ADA and the DCHRA, Plaintiff must allege that she was qualified for a position at Pepco with or without reasonable accommodations. *Badwal*, 139 F. Supp. 3d at 308. Defendants contend that Plaintiff's claims should be dismissed because Plaintiff has failed to allege that she was qualified for any position at Pepco. While it is a close call, the Court finds that Plaintiff has alleged facts sufficient to create an inference that she was qualified for a position with Defendants.

In order to proceed on her disability discrimination claim, Plaintiff must allege that, at the time of the adverse action, she qualified for a position, meaning that "with or without reasonable accommodations, [Plaintiff could] perform the essential functions of the employment position that [Plaintiff] h[eld] or desire[d]." 42 U.S.C. § 12111(8). "The term 'qualified,' with respect to an individual with a disability means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires." 29 CFR § 1630.2(m). Defendants contend that, because Plaintiff points to no specific positions for which she was qualified, she has failed to allege facts establishing that she was a "qualified" individual within the meaning of the ADA and DCHRA.

Plaintiff claims that, contrary to Defendants' arguments, she has alleged facts sufficient to establish that she was qualified for a position with Defendants. First, Plaintiff contends that the fact that she was employed in at least two positions by Defendants for 12 years from 1994 to 2006 leads to the inference that she was qualified for a position with Defendants at the time she was not reinstated and was instead terminated in 2018. Am. Compl., ECF No. 9, ¶¶ 8-9. Second, Plaintiff alleges that from August 2016 through at least May 2017, Defendants informed Plaintiff that they had identified a position for her and that she would soon be returned to work. *Id.* at ¶ 15. It is true that Plaintiff alleges no incidents occurring within the statute of limitation in which Defendants told Plaintiff that a position had been identified for her. However, Plaintiff contends that Defendants' repeated representations to her that a position had been identified for her leads to the inference that Plaintiff was qualified for a position with Defendants during the relevant period. Finally, Plaintiff alleges that, insofar as she failed to identify a specific job for which she was qualified, that failure is attributable to Defendants' discriminatory acts. Plaintiff contends that Defendants repeatedly assured her that she would be reinstated only to change position and

give Plaintiff 90 days to find a job on her own. *Id.* at ¶¶ 15-16. Plaintiff argues that to blame her "for not finding a job at Pepco all by herself within a very short termination deadline—when Pepco had the information about its own jobs and previously said over several months that it had jobs for her—is to take a position that practically shouts 'pretext for discrimination!'" Pl.'s Opp'n, ECF No. 11, 18 (emphasis omitted).

As the Court has already indicated, whether or not Plaintiff has pled facts sufficient to create an inference that she was "qualified" for a position with Defendants is a close call. However, on a Motion to Dismiss, the Court "must treat the complaint's factual allegations— including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (internal quotation marks omitted). The Court's reluctance to conclude that Plaintiff was not qualified for any position with Defendants at this stage in the litigation is supported by the D.C. Circuit's caution that a plaintiff "need not plead facts showing each of [the] elements" of a discrimination claim "in order to defeat a motion under Rule 12(b)(6)." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161-62 (D.C. Cir. 2015). With these principles in mind, the Court finds that Plaintiff has pled allegations which are adequate to create an inference that she is a qualified individual. The Court expresses no opinion as to whether or not discovery will ultimately reveal that Plaintiff was qualified for a position with Defendants. The Court's decision is limited to concluding that Plaintiff has alleged facts sufficient to survive a motion to dismiss.

Finally, in order to state a claim for disability discrimination, Plaintiff must allege that she suffered an adverse personnel action because of her disability. *Badwal*, 139 F. Supp. 3d at 308. Defendants contend that Plaintiff has failed to allege any actionable adverse employment

action and that she has failed to allege that Defendants took any actions because of her disability. The Court disagrees.

An employee experiences an adverse employment action if she experiences a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 158 (D.D.C. 2014) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). Plaintiff argues that, in her Amended Complaint, she alleged two adverse employment actions—(1) Defendants' threats of termination and failure to reinstate Plaintiff and (2) Plaintiff's termination. The Court will address both events.

First, Plaintiff contends that Pepco's threat to terminate her unless she found an open position on her own constituted an adverse employment action adversely affecting her future employment opportunities. Pl.'s Opp'n, ECF No. 11, 13. As an initial matter, the Court notes that Defendants' threats to terminate Plaintiff, alone, do not constitute an adverse employment action. Plaintiff was already absent from the work place. As such, with Defendants' threats to terminate Plaintiff if she did not find an open position, Plaintiff's "day-to-day status did not change; she was still absent from the workplace." *Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1251-52 (D.C. 2009). Because Plaintiff was already absent from the workplace, the threat of termination did not cause a significant change in Plaintiff's employment status, nor did it constitute an objectively tangible harm.

However, Plaintiff's allegation concerning Defendants' failure to reinstate her is a different matter. Plaintiff alleges that Defendants repeatedly told her that they would return her to work in a position to be identified by Defendants. But, in January 2018, Plaintiff claims that Defendants abruptly changed their position, stating that they would not reinstate Plaintiff unless

19

she found an appropriate position in 90 days. Am. Compl., ECF No. 9, ¶ 16. Depending upon how the factual record develops, the change in conditions which would lead to Plaintiff's reinstatement may constitute an adverse employment action. *See Kaufman v. Perez*, 745 F.3d 521, 529 (D.C. Cir. 2014) (finding that, under the circumstances presented, the plaintiff had not alleged an adverse employment action, but recognizing that "[p]erhaps a failure to reinstate might in some circumstances constitute an independent discriminatory act"). The D.C. Circuit has explicitly noted that courts have found a failure to reinstate to be actionable where "a complainant can show disparate treatment or bias in the reinstatement process." *Id.* at 530. Here, Plaintiff has alleged that Defendants discriminated against her by putting the onus on her to locate a job for which she was qualified when "other Pepco employees are routinely assigned and reassigned when vacancies become available." Am. Compl., ECF No. 9, ¶ 17. As such, the Court is not prepared, on this limited record, to conclusively decide that the failure to reinstate Plaintiff was not an adverse employment action.

Defendants rely on *Lytes v. District of Columbia Water and Sewer Authority*, 527 F. Supp. 2d 52 (D.D.C. 2007) for the proposition that placing the burden on Plaintiff to identify a new position at Pepco prior to reinstatement was not an adverse employment action. In *Lytes*, the court found that offering the plaintiff 60 days to find a new position was "not the action[] of an employer that perceived [the plaintiff] as disabled." 527 F. Supp. 2d at 63. But, in *Lytes*, the court was analyzing the first prong of a disability claim, membership in a protected class, not the third prong, existence of an adverse employment action. *Id.* Additionally, in *Lytes*, it does not appear that the plaintiff alleged that the defendant's reinstatement process was discriminatory and more challenging than the assignment process for other employees. As such, the Court does not find *Lytes* persuasive on this issue.

Second, Plaintiff argues that her actual termination constitutes an adverse employment action. Plaintiff alleges that she was fired on June 21, 2018. Am. Compl., ECF No. 9, ¶ 20a. Plaintiff contends that, in addition to losing the wages that she would have earned had she been reinstated, Plaintiff lost necessary healthcare coverage that she had maintained for herself and her daughter as an employee of Pepco. As such, Plaintiff argues that her termination affected the privileges of her employment and constitutes an actionable adverse employment action.

Defendants contend that Plaintiff's termination is not an adverse employment action because it merely reconciled Defendants' "personnel records with the status quo, which was that [Plaintiff] had not been actively employed by Pepco for more than a decade and had not identified any open position she could perform." Defs.' Mot., ECF No. 10, 9. In support, Defendants cite *Barrett v. Covington & Burling LLP*, 979 A.2d 1239 (D.C. 2009), in which the District of Columbia Court of Appeals explained that threats of termination are not actionable if the employee was already on leave and "her day-to-day status did not change." 979 A.2d at 1251-52.

But, *Barrett* is distinguishable. In *Barrett*, the court concluded that the plaintiff had never actually been fired and had instead simply assumed that she would be discharged. *Id.* at 1253. Here, Plaintiff alleges that she was actually terminated by Pepco on June 21, 2018. Am. Compl., ECF No. 9, ¶ 20a. Moreover, while Plaintiff's day-to-day status may not have changed, the privileges of her employment were altered and she faced an objectively tangible harm with the removal of her healthcare coverage. *Id.* As such, the Court finds that Plaintiff has alleged that her termination constitutes an adverse employment action.

In addition to alleging an adverse employment action, Plaintiff must further allege that Defendants took the adverse employment action because of Plaintiff's disability. In her

Amended Complaint, Plaintiff alleges that "[b]y placing the burden on [Plaintiff] to identify a position, apply and be selected as if she were not a Pepco employee, Pepco has discriminated against [Plaintiff] based on her history of disability and Pepco's perception of her disability because other Pepco employees are routinely assigned and reassigned when vacancies become available." Am. Compl., ECF No. 9, ¶ 17. As such, Plaintiff contends that Defendants' failure to reinstate her and her ultimate termination, which resulted from her failure to be reinstated, occurred because of disability discrimination.

Defendants argue that Plaintiff's allegations do not establish that Defendants were motivated by their perception of Plaintiff's disability or by Plaintiff's record of disability. Instead, Defendants contend that "the facts alleged by Plaintiff establish that Pepco offered her the opportunity to identify positions for which she believed she was qualified, and that she did not do so." Defs.' Mot., ECF No. 10, 10. But, Plaintiff has alleged that, in facilitating her reinstatement, Defendants treated her differently than other Pepco employees because of her disability status. Rather than simply being assigned to a vacancy, Plaintiff alleges that Defendants placed the burden on her to find a position, apply, and be selected. Am. Compl., ECF No. 9, ¶ 17. As such, Plaintiff has alleged that Defendants took actions adverse to Plaintiff because of her disability status.

Defendants further question Plaintiff's allegation of disability discrimination, contending that Plaintiff has failed to allege sufficiently specific facts about these other employees who were assigned or reassigned positions within Pepco. However, the Court finds that Plaintiff's allegations of disability discrimination are sufficient to survive a motion to dismiss. At the motion to dismiss stage, the Court takes the plausible allegations in Plaintiff's Amended Complaint to be true. *Twombly*, 550 U.S. at 570. And, Plaintiff has plausibly alleged that

Defendants established a separate and more challenging reinstatement process for her because of her disability status. The Court makes no judgment as to whether or not additional factual development will ultimately establish that Plaintiff's reinstatement process was separate and more challenging than the reinstatement process for similarly situated employees. Rather, the Court concludes only that Plaintiff's allegations are sufficient to survive a motion to dismiss.

For the forgoing reasons, the Court finds that Plaintiff has stated a claim for disability discrimination under the ADA and the DCHRA. Plaintiff has alleged that she is protected under the acts due to her perceived disability and to her record of disability. While it is a close call, the Court concludes that Plaintiff has alleged facts sufficient to create an inference that she was qualified for a position with Defendants. And, finally, Plaintiff has alleged two adverse actions— that Defendants failed to reinstate her despite telling her that they would and that she was terminated. Plaintiff has alleged that these adverse employment actions were taken because of her perceived disability or her record of disability. As such, Plaintiff has alleged the elements necessary to state a disability discrimination claim and to survive a motion to dismiss.[6]

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES WITHOUT PREJUDICE IN PART Defendants' [10] Motion to Dismiss. The Court GRANTS Defendants' Motion and DISMISSES as untimely Plaintiff's claims related to Defendants' June 23, 2016

---

[6] In the Motion to Dismiss, Defendants also ask for the dismissal of any plausible failure to accommodate claim made by Plaintiff. But, it does not appear to the Court that Plaintiff states a failure to accommodate claim in her Amended Complaint. And, in her Opposition, Plaintiff did not address Defendants' arguments pertaining to a failure to accommodate claim and made no statements suggesting that she was making such a claim. As it does not appear that Plaintiff is attempting to state a failure to accommodate claim, the Court need not address this issue. If, at a later point in the litigation, it appears that Plaintiff is making a failure to accommodate claim, Defendants may file for dismissal of that claim.

letter informing her that she needed to return to work and Defendants' alleged August 2016 to May 2017 comments that Plaintiff would be returned to work shortly.

However, Defendants' Motion is otherwise DENIED WITHOUT PREJUDICE. The Court concludes that Plaintiff's claims concerning Defendants' alleged January 2018 decision to terminate her in 90 days if she could not identify a new position and her June 21, 2018 termination are timely. The Court further concludes that Plaintiff has alleged facts sufficient to state a claim for disability discrimination under the ADA and the DCHRA for these events. Additional factual development is required before the Court can more fully assess many of the issues presented in Defendants' Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge